UNITED STATES of AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ALF WILLIAMS,

      Plaintiff,                      DEMAND FOR JURY TRIAL

-vs-                              Case No.
                                     Hon.

PRIME MOTORZ LLC,

      Defendant.

## COMPLAINT AND JURY DEMAND

## JURISDICTION

1. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2. As to any supplemental claims set forth herein, these claims arise out of the same nucleus of fact and there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

## PARTIES

3. The Plaintiff to this lawsuit is Alf Williams who resides in Brighton, Michigan in Livingston County.

1

4.     The Defendant to this lawsuit is Prime Motorz LLC ("PMLLC") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

## VENUE

5.     The transactions and occurrences which give rise to this action occurred in Macomb County.

6.     Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

7.     When Congress drafted 49 U.S.C. 32701 *et seq.* it found that:

    a.     buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle;

    b.     buyers are entitled to rely on the odometer reading as an accurate indication of the mileage of the vehicle;

    c.     an accurate indication of the mileage assists a buyer in deciding on the safety and reliability of the vehicle; and

    d.     motor vehicles move in, or affect, interstate and foreign commerce.

8.      When buyers of motor vehicles cannot rely on the accuracy of an odometer reading due to false statements in the chain of the vehicle's title, both the value and perceived condition of the vehicle are diminished.

9.      When owners in the chain of title of a vehicle make facially inaccurate, false certifications regarding the odometer reading of a vehicle at the time of transfer, subsequent purchasers  cannot rely on the odometer reading as an accurate indication of the mileage of the vehicle, as Congress has found they are entitled to do.

10.     A false, inaccurate certification of the mileage in the chain of title of a vehicle is an indication that the vehicle is unsafe, unreliable, and of diminished value.

11.     When unscrupulous sellers of motor vehicles, such as the Defendant in this matter, falsify their certifications of odometer readings in order to perpetrate other frauds, the fabricated odometer readings are sometimes at odds with accurate readings taken by other entities which report to databases such as repair facilities, oil change places, state inspection facilities etc.

12.     Under 49 U.S.C. § 32705, a person selling a vehicle must provide the buyer, in writing on the titling document, disclosure of the cumulative mileage registered on the odometer and other information required under the relevant regulations and may not give a false statement in making such disclosures.

3

13. Additionally, under 49 U.S.C. § 32705, a person acquiring a motor vehicle for resale – such as Defendant in this matter – may not accept a written disclosure under this section unless it is complete.

14. 49 U.S. Code § 32710 sets forth a private cause of action for violations of this law; specifically –

(a)Violation and Amount of Damages.—

A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $10,000, whichever is greater.

(b)Civil Actions.—

A person may bring a civil action to enforce a claim under this section in an appropriate United States district court or in another court of competent jurisdiction. The action must be brought not later than 2 years after the claim accrues. The court shall award costs and a reasonable attorney's fee to the person when a judgment is entered for that person.

15. On or about October 27, 2020, PMLLC, upon information and belief, acquired possession of a 2011 BMW X3, VIN 5UXWX5C52BL710253 ("the vehicle") from a private owner by the name of Tiffany Lewis; however, Tiffany Lewis did not transfer ownership of the vehicle to PMLLC on that date.

16.   In fact, from October 27, 2020 until November 13, 2020, Tiffany Lewis could not provide clean title to PMLLC because the vehicle's title was encumbered with a security interest.

17.   On or about October 27, 2020, PMLLC entered the vehicle into its inventory with a mileage of 120,601 and offered it for sale.

18.   On or about November 3, 2020, Plaintiff went to PMLLC to inquire into purchasing the vehicle and to test drive the vehicle.

19.   At no time on November 3, 2020 was an "FTC Buyer's Guide" posted on the vehicle.

20.   At no time on November 3, 2020, did PMLLC clearly or conspicuously disclaim implied warranties of merchantability and fitness.

21.   After test driving the vehicle, the parties discussed a concern over a small oil leak, the gasket, and the engine as they negotiated for the purchase of the vehicle.

22.   On or about November 3, 2020, PMLLC made the following representation and offer: if Plaintiff agreed to purchase the vehicle, PMLLC would have the gasket replaced and the oil changed and would warrant that the engine was in good, working order ("express warranty", "material misrepresentation").

23.   Plaintiff did not go to PMLLC's place of business on November 4, 2020.

24.     Plaintiff did not sign any paperwork for the purchase of the vehicle on November 4, 2020.

25.     Plaintiff did not go to PMLLC's place of business on November 5, 2020.

26.     Plaintiff did not sign any paperwork for the purchase of the vehicle on November 5, 2020.

27.     On or about November 6, 2020, PMLLC again reiterated that if Plaintiff agreed to purchase the vehicle, PMLLC would have the gasket replaced and the oil changed and would warrant that the engine was in good, working order ("express warranty", "material misrepresentation").

28.     On or about November 6, 2020, Plaintiff, relying on PMLLC's placed a $500.00 deposit over the phone to hold the vehicle.

29.     On or about November 6, 2020, PMLLC represented to Plaintiff that the vehicle was not ready for pick up because it was still at PMLLC's mechanic's facility having the gasket work done ("express warranty", "material misrepresentation"); in fact, this statement was false and made with the intent to defraud the Plaintiff.

30.     Plaintiff did not go to PMLLC's place of business on November 6, 2020.

31.     Plaintiff did not sign any paperwork for the purchase of the vehicle on November 6, 2020.

32.  On or about November 7, 2020, Plaintiff inquired about whether the vehicle was done at PMLLC's mechanic; PMLLC represented that the vehicle would be ready on Monday, November 9, 2020 ("express warranty", "material misrepresentation"); this representation was false – instead of telling the Plaintiff that the vehicle was not being repaired as promised, PMLLC failed to reveal this material fact with the intent to defraud the Plaintiff.

33.  Plaintiff did not go to PMLLC's place of business on November 7, 2020.

34.  Plaintiff did not sign any paperwork for the purchase of the vehicle on November 7, 2020.

35.  Plaintiff did not go to PMLLC's place of business on November 8, 2020.

36.  Plaintiff did not sign any paperwork for the purchase of the vehicle on November 8, 2020.

37.  On or about November 9, 2020, Plaintiff inquired about whether the vehicle was done at PMLLC's mechanic; PMLLC represented that the vehicle was still having the gasket repair done and that the vehicle would be ready "in an hour." ("express warranty", "material misrepresentation"); this representation was false – instead of telling the Plaintiff that the vehicle was not being repaired as promised, PMLLC failed to reveal this material fact with the intent to defraud the Plaintiff.

38. On or about November 9, 2020, relying on PMLLC's fraudulent representation that the gasket had been replaced and that the engine was in good, working order, Plaintiff arrived at PMLLC's lot and paid for the balance of the purchase price of the vehicle – $10,276.64 and took delivery of the vehicle along with a temporary registration and a 15-day temporary plate.

39. On November 9, 2020, PMLLC warranted to the Plaintiff and to the State of Michigan as an operation of law that:

   a.   It owned the vehicle it was selling ("express warranty", "material misrepresentation"); and

   b.   It was selling the vehicle with no liens "express warranty", "material misrepresentation").

40. On November 9, 2020, PMLLC did not own the vehicle.

41. On November 9, 2020, the vehicle was titled to Tiffany Lewis.

42. On November 9, 2020, the vehicle was registered to Tiffany Lewis with the State of Michigan.

43. On November 9, 2020, PMLLC was not in possession of the title to the vehicle.

44. On November 9, 2020, PMLLC delivered the vehicle to Plaintiff while it's title was encumbered by a security interest.

45.    At all times relevant, from the time it represented the vehicle for sale until the time it delivered the vehicle to Plaintiff, PMLLC represented that it was the owner of the vehicle ("express warranty", "material misrepresentation"); this representation was false and it was made with the intent to defraud the Plaintiff.

46.    At no time on November 9, 2020 was an "FTC Buyer's Guide" posted on the vehicle.

47.    At no time on November 9, 2020, did PMLLC clearly or conspicuously disclaim implied warranties of merchantability and fitness.

48.    At no time on November 9, 2020, did PMLLC provide Plaintiff with a copy of the title to the vehicle on which to certify the mileage on the odometer at the time of delivery as required under 49 U.S.C. 32701 *et seq.* and under the Michigan Motor Vehicle Code.

49.    At no time on November 9, 2020 did PMLLC present the Plaintiff with an application for title as required under the Michigan Motor Vehicle Code.

50.    At no time on November 9, 2020 did PMLLC present the Plaintiff with a conforming disclosure of mileage.

51.    On November 9, 2020, PMLLC knew that the title to the vehicle was encumbered by a lien.

9

52.   On November 9, 2020, PMLLC "sold" Plaintiff a vehicle that it didn't own and to which it did not have clean title and

53.   Plaintiff has not been at PMLLC's place of business since November 9, 2020, nor has he signed any paperwork regarding the purchase or registration of the vehicle since November 9, 2020.

54.   The vehicle was unfit and not merchantable.

55.   On or about November 10, 2020, the vehicle began to stall and Plaintiff discovered that PMLLC had lied about having the promised repairs done.

56.   On or about November 12, 2020, the State of Michigan issued a duplicate title to the vehicle in the name of Tiffany Lewis.

57.   On or about November 13, 2020, the lien holder on the title released its lien.

58.   At some point between November 12, 2020 and November 18, 2020, PMLLC took incomplete title from Tiffany Lewis, backdated the transfer, forged her signature on the transfer of title and falsely certified – as Tiffany Lewis – that the mileage on the vehicle was 120,601 on October 27, 2020.

59.    At some point between November 12, 2020 and November 18, 2020, PMLLC forged Plaintiff's signature on the title to the vehicle, falsely certified the odometer reading, and falsely certified that the sale occurred on November 4, 2020 to Plaintiff and to the State of Michigan.

60.  At some point between November 12, 2020 and November 18, 2020, PMLLC submitted a forged or altered RD-108 to the State of Michigan, backdating the form to November 4, 2020 and falsely certifying that the vehicles mileage on that form.

61.  PMLLC's false statements, forgeries, and false certifications of mileage have rendered the chain of title, on its face, so unreliable, that it is obvious to a subsequent purchaser that the mileage certifications are false.

62.  The vehicle did not meet PMLLC's specific representations which constituted express warranties.

63.  PMLLC disclaimed or limited the warranty of merchantability and fitness for use without doing so clearly and conspicuously.

64.  The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 *et seq.*

65.  Plaintiff's have spent $3,100.00 so far in repairs.

66.  Because PMLLC lied about the repair, the engine has suffered great harm and will cost $19,500.00 to repair.

67.  The day after the Plaintiff purchased the vehicle, he contacted PMLLC and informed PMLLC that the vehicle was not running correctly; PMLLC continued to insist that the gasket had been replaced.

68.   As the vehicle's engine fell further into disrepair, PMLLC promised in writing to do whatever it could to make things right.

69.   Plaintiff, at some point, demanded a refund, and PMLLC promised to pay for 50% of the repairs needed.

70.   Since PMLLC made it's post-sale promises to Plaintiff, it has ignored Plaintiff's demands for relief.

71.   Each time Mr. Williams learned of a mechanical defect, he promptly notified PMLLC of that defect.

72.   Based on the frequency of breakdown, the vehicle's time out of service, the severity of the mechanical failures, the cost of warranty coverage, and amount of other expenses incurred during the limited time of ownership of the vehicle, the vehicle has been rendered unmerchantable, unfit, and of diminished value to Mr. Williams.

73.   Mr. Williams properly rescinded, canceled, or otherwise terminated the contract of sale, thereby requiring PMLLC to return of all payments for the vehicle, cancel the security interest in the vehicle, and return the motor vehicle retail instalment sales contract.

## COUNT I -- Federal Odometer Act (PMLLC)

74.   Mr. Williams incorporates the preceding allegations by reference.

75. By not having title to the vehicle when it delivered the vehicle to the Plaintiff, PMLLC could not comply with 49 U.S.C. 32705 in any way.

76. By failing to provide Mr. Williams with a legal and conforming odometer disclosure at the time of sale, PMLLC has, with intent to defraud, violated the Federal Odometer Act, 49 U.S.C. § 32701-32711.

77. Because of the inaccurate dating on the titling and registration documents, the odometer on the vehicle did not accurately reflect the actual miles of the vehicle at the time of sale.

78. Instead of providing the disclosure PMLLC forged the signature of Mr. Williams on the odometer disclosure required by 49 U.S.C. §§32701-32711.

79. PMLLC failed to provide the required disclosure of mileage on the reassignment of title as required by 49 U.S.C. §§32701-32711 *et seq*.

80. Mr. Williams has suffered damages as a result of these violations of 49 U.S.C. §§32701-32711 *et seq*.

## COUNT II -- Magnuson-Moss Warranty Act (PMLLC)

81. Mr. Williams incorporates the preceding allegations by reference.

82. Williams is a consumer as defined in 15 U.S.C. §2301(3).

83. PMLLC is a supplier and warrantor as defined in 15 U.S.C. §230 1(4)(5).

84.   As a seller of motor vehicles, PMLLC was obligated to comply with the FTC buyers guide rule promulgated under the Magnuson Moss Warranty Act, 15 C.F.R. 455.1 *et seq*

85.   Under the buyers guide rule, PMLLC was required to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Williams.

86.   PMLLC failed to affix the buyers guide to the car prior to the sale of the vehicle to Mr. Williams , thereby violating the buyers guide rule and rendering any buyer's guide which Mr. Williams may have signed ineffective.

87.   Under the buyers guide rule, 16 C.F.R. §455.4, PMLLC may not make any oral representations contrary to the final terms incorporated into the buyer's guide.

88.   The oral representations made by PMLLC are contrary to the terms stated in the buyers guide, and therefore violate 16 C.F.R. §455.4 and constitute an unfair or deceptive practice under 15 U.S.C. 2301 *et seq*.

89.   Under 15 U.S.C. §2301(a)(1), PMLLC, must remedy any defect, malfunction or nonconformance of the subject vehicle as a warrantor of the vehicle.

90.   Mr. Williams has suffered damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

91.   Mr. Williams suffers continuing damages as a result of these breaches of warranty and failure to provide a remedy under 15 U.S.C. §2304(d).

## COUNT  III  -- Michigan Odometer Act (PMLLC)

92.   Mr. Williams incorporates the preceding allegations by reference.

93.   The odometer statement presented to Mr.  Williams  did not accurately reflect the odometer reading of the vehicle at the time the vehicle was sold to Mr. Williams.

94.   PMLLC knew or had reason to know of the inaccuracy of the odometer statement relating to the vehicle, which statement was presented to Mr. Williams.

95.   PMLLC forged the signature of Mr.  Williams  on the odometer disclosure required by M.C.L. §257.233a.

96.   PMLLC failed to provide the required disclosure of mileage on the reassignment of title as required by M.C.L. §257.233a.

97.   Mr. Williams suffers continuing damages as a result of these violations of M.C.L. §257.233a.

## COUNT  IV  -- Violation of Michigan Consumer Protection Act (PMLLC)

98.   Mr. Williams incorporates the preceding allegations by reference.

15

99.   PMLLC is engaged in trade or commerce as that term is defined in M.C.L. § 445.902.

100.  PMLLC has engaged in one or more of deceptive or unfair practices prohibited by the Michigan Consumer Protection Act, M.C.L. § 445.903, including but not limited to the following:

a.   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

b.   Using deceptive representations or deceptive designations of geographic origin in connection with goods or services.

c.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

d.   Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

e.   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

16

f.   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions.

g.   Representing that a part, replacement, or repair service is needed when it is not.

h.   Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i.   Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.   Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.   Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

m.   Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and

17

conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

n. Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o. Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p. Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q.   Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

r.   Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s.   Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

t.   Causing coercion and duress as the result of the time and nature of a sales presentation.

u.   Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

101.  Mr. Williams has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

102.  Mr. Williams suffers continuing damages as a result of these violations of the Michigan Consumer Protection Act.

19

## COUNT V  -- Misrepresentation (PMLLC)

103.   Mr. Williams incorporates the preceding allegations by reference.

104.   The material representations were intended to induce the reliance of Mr. Williams.

105.   The material representations did induce the reasonable reliance of Mr. Williams.

106.   PMLLC made the material representations with actual knowledge of their falsity.

107.   PMLLC made the material representations with reckless disregard to their truth or falsity.

108.   PMLLC made the material representations even though it should have known that they were false.

109.   These actions constitute a misrepresentation upon Mr. Williams by PMLLC.

110.   Mr. Williams has suffered damages as a result of this misrepresentation.

111.   As a result of this misrepresentation, Mr. Williams suffers continuing damages.

## COUNT VI  -- Breach of Contract (PMLLC)

112.   Mr. Williams incorporates the preceding allegations by reference.

113. PMLLC's tender of the performance did not conform as a result of the vehicle's mechanical defects, lack of merchantability, or fitness for intended purpose which existed at the time of delivery.

114. The failure of PMLLC to deliver conforming goods, title, and follow up services at the contract price constitutes a material breach of contract.

115. Mr. Williams has suffered damages as a result of this breach of contract.

116. Mr. Williams suffers continuing damages as a result of this breach of contract.

## COUNT VII -- Breach of Warranties (PMLLC)

117. Mr. Williams incorporates the preceding allegations by reference.

118. PMLLC has breached its warranty of merchantability.

119. PMLLC has breached its warranty of fitness for intended purpose.

120. Mr. Williams has suffered damages as a result of these breaches of warranty.

121. Mr. Williams suffers continuing damages as a result of these breaches of warranty.

## COUNT VIII -- Repudiation (PMLLC)

122. Mr. Williams incorporates the preceding allegations by reference.

123. There remain executory obligations relating to the purchase of the vehicle.

124. Mr. Williams demanded assurances of PMLLC's performance in the demand letter sent to PMLLC.

125. PMLLC failed or refused to provide assurances of its performance consistent with its obligations.

126. PMLLC's failure to provide assurances of its performance constituted a repudiation of its contract with Mr. Williams.

127. Mr. Williams has suffered damages as a result of this repudiation.

128. Mr. Williams suffers continuing damages as a result of this  repudiation.

## COUNT  IX  -- UCC Revocation Of Acceptance (PMLLC)

129. Mr. Williams incorporates the preceding allegations by reference.

130. The nonconformity of the vehicle could not have been reasonably discovered by Mr. Williams at the time PMLLC tendered delivery.

131. Mr. Williams would not have accepted the vehicle had Williams known that the vehicle was nonconforming.

132. PMLLC has not made its tender of delivery conforming.

133. Mr. Williams sent notice of revocation within a commercially reasonable time.

134. Mr. Williams has suffered damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

135. Mr. Williams suffers continuing damages as a result of this failure to provide a conforming tender or return of purchase price after revocation of acceptance.

## <u>COUNT X</u> — <u>Motor Vehicle Code Violations (PMLLC)</u>

136. Mr. Williams incorporates the preceding allegations by reference.

137. PMLLC's failure to effectively transfer title constituted a violation of M.C.L. §257.235.

138. Mr. Williams may void the contract of sale as a result PMLLC's violation of the Motor Vehicle Code.

## <u>JURY DEMAND</u>

139. Alf  Williams demands a jury trial in this case.

## <u>REQUEST FOR RELIEF</u>

Plaintiff requests that this Honorable Court grant the following relief:

1. *Assume jurisdiction over this case including all supplemental claims.*

2. *Award actual damages.*

3. *Award treble damages.*

4. *Award statutory and punitive damages.*

5. *Award statutory costs and attorney fees.*

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:    /s/ Adam G. Taub
        Adam G. Taub (P48703)
        Attorney for Alf Williams
        17200 West 10 Mile Rd. Suite 200
        Southfield, MI 48075
        Phone:  (248) 746-3790
        Email:   adamgtaub@clgplc.net

Dated:  March 19, 2021